No. 14,812.

Old Homestead Bread Company et al. *v.* Marx Baking
Company.
(117 P. [2d] 1007)

Decided October 6, 1941.

Mr. I. L. Quiat, Mr. Ralph J. Cummings, Mr. Julius F. Seeman, for plaintiffs in error.

Mr. Arthur C. Gordon, Mr. Arthur St. George Gordon, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Defendant in error, plaintiff below, brought an action under the Unfair Practices Act (S.L. 1937, c. 261) to enjoin plaintiffs in error, defendants below, from violating the provisions thereof. The injunction was granted, and reversal of the judgment is sought on a writ of error. Reference will be made to the parties as in the trial court.

From the record it appears that the defendants, while separate corporations, had the same officers and directors, and manufactured the same bakery products. The Star Baking Company sold and distributed bakery products in southern Colorado, the Old Homestead Bread Company in northern Colorado. The alleged acts of violation took place in and around Prowers county in the southeastern part of the state, which, of course, is in the territory served by the Star company. "Town Talk" bread is the principal product manufactured and sold by both companies.

The amended complaint sets forth the following alleged violations of the Unfair Practices Act, supra:    1.

That on January 26, 1939, the defendants caused an advertisement to be published in a daily paper of Lamar, Colorado, "offering to give one package of Butterfly Rolls free with every loaf of Town Talk Bread purchased from a local grocer in Lamar, Colorado"; that the same advertisement was repeated in two local papers on the day following. 2. That on February 2, 1939, they caused to be inserted in a daily paper of the same city an advertisement "offering to give one package of Cinnamon Rolls free with every loaf of Town Talk Bread purchased from a local grocer in Lamar, Colorado"; that this advertisement was repeated in two local papers the following day. 3. That on February 10, 1939, they again caused an advertisement to be published in a Lamar daily paper "offering to give one loaf of Genuine Honey Krushed Wheat Bread free with every loaf of Town Talk Bread purchased from a local grocer in Lamar, Colorado." 4. That between the dates of January 27, 1939, and February 11, 1939, defendants gave away numerous slips of paper to people residing in Lamar and Wiley upon which was printed the following promise: "This coupon signed by your customer will be accepted as 10c in payment for Town Talk Bread." That as a result of the distribution of these "coupons" large quantities of bread were given away by said defendants. 5. That on February 10, 1939, defendants caused to be distributed handbills in the city of Lamar offering to present a one dollar bill to every person "in whose home was found all or part of a loaf of Town Talk Bread," and "that the said defendants gave to local grocers large numbers of loaves of bread for the purpose of permitting said grocers to sell the same or use the same in delivering said bread to those surrendering the coupons." 6. That the said defendants "have offered to give to other grocers in the said community loaves of Town Talk Bread * * * with the intent and for the purpose of injuring competitors and destroying competition."

All of these allegations were established as facts in the trial court and counsel for the defendants so admit, so far as the defendant Star Baking Company is concerned.

The trial court in this regard entered its permanent injunction in the following language:

"It is further ordered * * * that a writ of permanent injunction be issued, permanently restraining and enjoining the said defendants, and each of them, through officers, agents, employees, servants, or otherwise, from:

"(a) Giving to any retail merchant or any other consumer any of its products, except samples, which are defined to be a part of anything presented for inspection or intended to be shown and used as evidence of the quality of the whole;

"(b) Advertising by newspaper, or otherwise, to give, or offering to give, or actually giving, or selling, offering to sell or actually selling to any retail merchant or other consumer, any article or product in addition to the article or product sold, without receiving legal compensation for such additional article or product sold, in addition to the legal compensation for the primary article or product sold;

"(c) Giving or offering to give any article free with any product sold, without receiving legal consideration for all articles sold or transferred;

"(d) Using the device or scheme of distributing free tokens of the nature of slips of paper, or otherwise, entitling the person receiving the same to exchange the tokens for articles or products without the legal price therefor;

"e) Advertising to give, or giving anything of value to any person having in his possession products of the defendants, or either of them, or using any device or scheme of similar nature.

"(f) Inducing or attempting to induce the purchase or handling of products of defendants by a retail merchant, or other consumer, by giving or allowing special

concessions of either a temporary or permanent nature, such as the giving or offering to give quantities of merchandise to said merchant or other consumer, or paying, or offering to pay, for the newspaper or other advertising costs of such merchant."

As grounds for reversal and remand, counsel for defendants contend: "1. That the specific findings are too broad and wide-sweeping; 2. That the injunction is too broad and drastic; 3. That there is not sufficient evidence against Homestead Company to warrant any judgment or decree against it."

1. There can be no just criticism of the trial court's findings in this matter. The record discloses that these defendants entered upon a carefully planned, intensive campaign, using nearly all of the common "tricks of the trade" to break into the market in the territory served by competitors. We think the established facts fully justify the trial court's findings. We quote from the testimony of one witness as set forth in the abstract, indicating the type of testimony offered at the trial. "I am a grocer at Lamar, Colorado. Sales managers of the defendant companies told me they would give me a hundred loaves of bread in order to get their bread in Lamar and the sky was the limit in order to get their bread in." Thus, it would seem that the trial court's findings are not as "wide-sweeping" as the companies' announced objectives.

2. In regard to their second contention, counsel for defendants set out twelve particulars in their complaint of the decree, such as prohibition against gift regardless of intention, unlimited as to area and nature of products, criticism of the trial court's use of the words "legal competition" and "legal price" without defining their meaning, prohibition against defendants paying for any advertising of any retail merchant, etc.

Every decree is to be construed in the light of a given situation, and we think this decree represents a studied attempt on the part of the trial court to cover

exactly the preceding conduct of these defendants. As already indicated they had resorted to almost every ingenuity conceivable in order to accomplish their purpose, and it would be impossible for the court to anticipate other devices which might be used in an attempt to circumvent or frustrate the plain meaning of the Unfair Practices Act. It is urged that this decree prohibits the giving away of bread to the Salvation Army, or for any other charitable purpose. True, if it could be shown that it was being done with the intent to violate the act in question, but not otherwise. We need only state that this injunction must be construed in relation to, and in conformity with, the act itself.

█ Defendant Star Baking Company in its answer contends: "That this defendant does not propose and will not at any time in the future give away to the public for any purpose whatsoever any of its bread or its products; that it will not give away any cash or other prizes to any one contingent upon the purchase or use by such party or others of this defendant's bread or bakery products." We assume the same applies to the Old Homestead Company. If so, it is impossible to see any occasion for concern as to the effects of this decree. In any event, either of the defendants is entitled to an opportunity at all times to be heard should it be cited for contempt, and it alone must determine its future conduct.

█ As to the phrases, "legal consideration" and "legal price," no court can anticipate the meaning of such words in advance of their use in particular situations. It will be time enough to pass upon their significance as and when questions concerning them arise. Their meaning here as applicable to admitted facts was plain enough.

3. We think there was sufficient evidence to include the Old Homestead Company in this decree. As already indicated, both companies had the same officers and directors. Their products were identical and it was those

products that were made the instruments of offense in the present situation. It is admitted that the general sales manager acted as such for both companies and one of his promotional letters to a local baker was written on the stationery of "The Old Homestead Bread Co.", and signed "The Bakers of Town Talk Bread–By: C. J. Downing." Downing was the general sales manager.

"To ascertain the meaning of any part of an injunction, the entire injunction must be looked to; and its language, like that of all other instruments, must have a reasonable construction with reference to the subject about which it is employed." 32 C.J. 370, §624.

If the practice "has been abandoned in good faith and for all time, an injunction can do the defendant no harm, and it is a protection to which we deem the plaintiff entitled." *Bradford Baking Co. v. Weber Baking Co.,* 43 Cal. App. 570, 574, 185 Pac. 417, quoted in Nims on Unfair Competition and Trade-Marks (3d ed.) 923.

Under the record before us we see no necessity for a modification of the court's decree.

Judgment affirmed.

MR. JUSTICE BURKE specially concurs.

MR. JUSTICE BURKE specially concurring.

I concur in the conclusion, and this only, because I think plaintiff in error has, by its course as disclosed by the record, waived complete defenses which it had, and relied upon others which it had not.